CHICAGO, ST. PAUL, MINNEAPOLIS & OMAHA RAILWAY
COMPANY V. JAMES B. MCMANIGAL ET AL.*

FILED APRIL 19, 1905. No. 13,691.

1. **Contradictory Verdicts: REVIEW.** When contradictory verdicts are
   returned in favor, respectively, of two several parties, it is the
   duty of the court to ascertain whether there is any other error,
   and, if not, which of them, if either, is such only as could be
   upheld by the evidence, and if either of them is such, to render
   a judgment of affirmance thereon, disposing of the other as the
   law and the relations of the parties may require.

2. ——: JUDGMENT. When, in a joint action against a principal and
   his agent to recover damages for alleged negligence of the agent
   in conduct strictly within the performance of his duty, there is
   a verdict in favor of the latter that is free from error and is
   such as could alone be supported by the evidence, there should
   be a judgment for the principal also, although upon the same
   record and in the same case there may be a verdict against him.

ERROR to the district court for Douglas county: GUY
R. C. READ, JUDGE. *Reversed as to railway company.*

*B. T. White* and *J. B. Sheean,* for plaintiff in error.

*T. J. Mahoney, John D. Ware* and *H. C. Brome, contra.*

AMES, C.

A bare outline of the facts will suffice for an under-
standing of the problems presented for solution in this
case.

William Rogers was engaged as foreman of a company
of laborers, one of whom was the plaintiff, in the demoli-
tion of a building belonging to the defendant railway
company and standing on its right of way. It is alleged
that in the construction of the building, fourteen years
previously, there was a defect of a character affecting its
stability to such a degree as to render it more easily de-
structible than it would otherwise have been, but it is not

* Rehearing allowed. See opinion, p. 585, *post.*

claimed that such alleged weakness was concealed or rendered the building unsafe for the purposes for which it was erected, or diminished its durability under ordinary circumstances, or that it was constructed with a view to its future destruction, or that, if it had been so, the company would have been under any duty or obligation to its employees or the public to render the work of demolition unnecessarily difficult. But it is alleged that Rogers negligently commanded the plaintiff to engage in the work of wrecking at a place rendered dangerous by means of such weakness, and that as a consequence thereof the building, while the plaintiff was so employed, unexpectedly gave way, precipitating him to the ground and inflicting injuries upon his person.

This is an action for damages brought against the company and Rogers jointly. There were separate answers which for the purposes of the present discussion may be treated as consisting severally of a general denial accompanied by a plea of contributory negligence.

The court instructed the jury that they were at liberty to find in favor of either party and against the other, and they accordingly returned a verdict in favor of Rogers and against the plaintiff, but in favor of the plaintiff and against the company for substantial damages. The instruction was excepted to, and the plaintiff and the company prosecute separate petitions in error. Before filing its motion for a new trial, the latter filed a motion for a judgment in its favor on the ground that the verdict in favor of Rogers is equivalent to a special finding in its favor that there was no actionable negligence, and is inconsistent with the general verdict against it, which it therefore overrides, entitling the company to judgment under the statute governing such cases. The motion was overruled. The plaintiff excepted to the instruction and assigns it for error in his petition in error and brief, but he was not prejudiced by it unless by reason of it he was deprived of a verdict to which otherwise he was or would have been entitled and, therefore, presumably, would have

obtained. He also assigned in his brief that the court erred in refusing to give three instructions requested by him, but he presented no argument in support of the assignment either in his brief or orally. Under such circumstances we do not feel obligated to enter upon a critical examination of them, and it may suffice to say that after reading them we are of opinion that the court did not err in their refusal in the form in which they were drawn, and that so much of them as appears to us to be pertinent to the issues involved seems to us to have been brought to the attention of the jury by instructions which were given by the court upon his own motion.

The only other complaint in his petition in error is by way of quotation from the opinion of this court in *Gerner v. Yates*, 61 Neb. 100: "The verdict is an anomaly; it is in irreconcilable conflict with itself. It is in effect a declaration by the jury that the material allegations of the petition are both true and false"; but no specific assignment to this effect is to be found in the motion for a new trial, or in the petition in error, and the opinion cited does not hold that such an apparent absurdity is necessarily fatal to both verdicts, except in instances where both are based upon the same conflicting evidence, and in that case the verdict in favor of one only of the defendants was set aside because, as the opinion says, its correctness was not conclusively established by the evidence. But in the case at bar it is not contended that there is not sufficient evidence to support the verdict in favor of the defendant Rogers. All that is urged is that there is some slight contradiction upon a not vitally material point. Why then should he be deprived of the fruits of his just victory because the jury absurdly condemned another whom, upon the same evidence, they might with equal propriety have exonerated? But counsel says that the court erred in expressly advising the jury that they were at liberty to commit such an absurdity and that but for this error the plaintiff might have recovered a verdict against both defendants. True, but it is at least

equally probable that in such a case he would not have recovered against either, and neither supposition goes any distance at all toward an answer to the question whether the error was prejudicial. That question can only be answered, as it seems to us, by ascertaining, as in other cases, whether there is any other prejudicial error and, if none, whether either verdict is alone sustained by the evidence.

In a case like the one at bar, and in most cases of like kind, sufficiency of evidence as to one verdict is at the expense of insufficiency as to the other, and *vice versa,* and the true rule, we think, is, when the evidence is not conflicting or substantially so, to uphold the verdict having adequate support and to set aside the other, and so the court may avoid supplementing the absurdity of the jury with one of its own. And this is what the court in fact did in *Gerner v. Yates, supra,* although the opinion does not express the matter quite clearly to that effect. In the present instance it is not contended, nor could it successfully be, that if Rogers was the sole defendant the verdict in his favor would fall to the ground for lack of support by the evidence, and it is quite clear that a verdict against him would lack sufficient such support, nor can we understand why it should suffer that fate solely because of the joinder of his codefendant. His conduct, which was confined strictly to the line of his duty and employment, was the sole subject of investigation. He was not merely an agent, in a loose or general sense, but for all practical purposes he was the company, representing it, as respected the matter in hand, as fully and completely as, and doubtless more efficiently than, would the president and board of directors or the assembled stockholders have done if present. If the company was guilty of negligence it was his guilt, if it was innocent it was because he was free from blame. The law is firmly established that, if under such circumstances a suit against the agent alone had resulted in a judgment in his favor, it would have been a bar to a subsequent action against

his principal upon the same cause of action. *Doremus v. Root*, 23 Wash. 710, 54 L. R. A. 649, and cases cited in elaborate note. In the case named, which was in many respects similar to this, the supreme court of Washington set aside the judgment against the principal and rendered a judgment absolute in its favor, solely because there was no appeal from that in favor of the agent, saying that if there had been such an appeal there would have been no hesitancy in reversing both judgments and remanding the cause for a new trial. But as we have already said, we can see no justice or expediency in such a course. Although the instruction was erroneous because inapplicable to the character of the case at bar, it did not preclude the plaintiff from a full and fair investigation of, and unprejudiced verdict upon, all the issues involved. If he had succeeded upon sufficient evidence against the agent, his verdict would, we think, have established the liability of the principal as well as that of the agent, notwithstanding a verdict, had there been one, in favor of the former, because the former was a party to the suit and participated in the investigation of the transaction out of which the liability would have arisen. The company and Rogers were privies in a sense other and different from that in which that term is used in ordinary cases of alleged joint tort-feasors. If the principal had been sued alone, it might have bound the agent by the result by notifying him to appear and participate in the defense (*Doremus v. Root, supra*), and a corresponding obligation must, as we think, arise out of the participation of the principal as a party in a suit against the agent. And, reciprocally, a verdict and judgment in favor of the agent, free from error, and such as the evidence alone supports, must exonerate the principal.

We recommend, therefore, that the judgment against the railway company be vacated and set aside and the action as to it be dismissed, and that the judgment in favor of Rogers be affirmed.

LETTON and OLDHAM, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, it is ordered that the judgment against the railway company be vacated and set aside and the action as to it be dismissed, and that the judgment in favor of Rogers be affirmed.

JUDGMENT ACCORDINGLY.

The following opinion on rehearing was filed March 22, 1906. *Judgment modified:*

1. **Inconsistent Findings:** REVIEW. Two inconsistent findings of a jury upon the same issue, if based upon conflicting evidence, nullify each other. Such findings will not support a judgment. If one is the only finding possible under the evidence, a judgment thereon in favor of one of two joint defendants will be sustained, and a finding upon the same issue against the other defendant, being wholly unsupported by the evidence, will be reversed.

2. **Reversal:** PRACTICE. It is not the practice of this court to dismiss a law action upon reversing a judgment of the district court for want of evidence to sustain it. The cause is remanded to the district court for further proceedings.

SEDGWICK, C. J.

The opinion of the commissioner upon the former hearing was approved by the court upon the theory that the evidence was not sufficient to support a verdict against either the defendant Rogers or the defendant railroad company. Upon the reargument of the case and a further examination of the evidence as contained in the record, we are satisfied that the conclusion was for this reason correct.

The plaintiff, with several other men of whom the defendant Rogers was foreman, was engaged in removing the platform about the station house or depot building of the defendant company. This depot building and platform had been constructed and in use for about fourteen years. They were rebuilding the platform with new material, rejecting the old, and were raising the depot building. They had been engaged in this work for several days. The plat-

form extended entirely around the building. The plaintiff had been a part of the time engaged in sawing blocks "and blocking up." During the day when the accident occurred, he had been engaged in "tearing down," that is, in breaking up the platform and in assisting in removing it. A considerable portion of the platform had been removed and rebuilt with new material. They had reached the northwest corner of the building, and were attempting to remove the sills at the northwest corner of the platform, at the time of the accident. Directly under the northwest corner of the building a piling had been driven, and on this piling one end of each of three separate sills rested. These sills were 12 by 12 or 14 inches in size. One of these sills, which was supported at one end by the piling under the corner of the building, extended directly west to the west side of the platform; another one, the end of which rested upon the same piling, extended directly north to the north side of the platform; and the third one, the end of which was also supported by the same piling, extended to the northwest corner of the platform. The evidence is conflicting as to whether there was one of these sills running east and west along the north edge of the platform. The plaintiff testifies that there was, and that one end of the plank upon which he was standing was resting upon this sill, and, according to his testimony, when he loosened the sill extending directly north from the corner of the depot building that sill fell and also the sill on the north edge of the platform, which seems to have been connected with the sill which he was attempting to remove. The plank on which⁺ he was standing fell with these sills, and this was the cause of the accident. In the construction of the platform, joists were laid upon these sills and upon the joists the planks, which were described as "two-inch stuff," were laid. The planks and the joists had been removed from these sills. The foreman Rogers and the plaintiff were standing upon one of these sills. The plaintiff testifies that the foreman "picked up one of the joists that we had taken off, and just threw it right across the sills,

and says, 'Pinch the sill off.'" The plaintiff then stepped upon the plank, and began with a crowbar or "pinch-bar" to loosen the end of one of the sills from the piling which was the joint support of the three sills. It is contended that it was customary in the construction of such a platform to fasten the sills to the piling with "drift bolts." These are half-inch bolts, eighteen inches or more in length, driven down through the end of the sill into the piling. The contention is that, if this sill which accidently fell had been fastened with a drift bolt, the accident would not have occurred; and since the railroad company was bound to know the original construction of this platform, and therefore knew that this piling was not securely fastened with a drift bolt, it was negligent in allowing the plaintiff to undertake the work of removing these sills from the piling without informing him that they were not fastened to the piling with drift bolts. Of course, the plaintiff, in undertaking the work of breaking up and removing an old platform, would assume the ordinary risks incident to such employment. This is conceded, but the contention appears to be that he did not assume the extraordinary risk which resulted from the imperfect and unusual fastening of the sill to the piling. There does not appear to be any basis whatever in the evidence for this contention. These drift bolts, it appears from the evidence, are ordinarily used in the construction of bridges, and not in the construction of depot platforms. There is however some evidence in the record that drift bolts were used in the construction of such platforms; but, however this may be, it is shown by uncontradicted evidence that in removing sills from piling, if the sills had been fastened to the piling with these drift bolts, the first thing to be done is to draw the drift bolts with tools especially constructed for that purpose. The plaintiff himself testified that, if the sills were fastened with drift bolts, they had "a bar on purpose for that"—"a claw bar"—and that none of the men were using such bars in removing these sills, and that he could not have removed these sills

with such a bar as he was using, if they were fastened with drift bolts; that he would in that case "have had to use a claw bar to take the pin out," before he could have thrown the sill off; and that, if there had been a drift bolt there, he could have seen it where he was working. So that he knew that at least some of the sills were not fastened with drift bolts, and could easily see whether any particular sill was so fastened, if he cared to know. When the plaintiff undertook to remove sills from the piling, the first thing that would challenge his attention was the manner in which the sills were fastened to the piling. Considering the situation he was in, and the work which he had undertaken to perform, it would clearly be negligence on his part to fail to observe that the sills which supported him could be as easily removed from the piling as the one he was undertaking to remove. If he had supposed that these sills were fastened with drift bolts, his first duty would have been to withdraw those bolts, and by the order to "pinch off" the sills, he was notified that they were not fastened with drift bolts. Where drift bolts are not used, the sills are fastened to the piling by nailing the sills. The sills and the pilings were somewhat decayed. This condition was to be presumed. It was because of this condition that the work was made necessary. The parties engaged in it had notice of this fact. Indeed, the plaintiff testified that he had observed it. There is no support whatever for the proposition that the plaintiff had reason to suppose that these sills were firmly attached to the piling, and that in loosening one he might not probably loosen another also. There being no other evidence of negligence on the part of the employer, the verdict against the company was wholly unsupported. For like reason the verdict in favor of the defendant Rogers was justified. No verdict against him could be sustained by the evidence.

2. The judgment, then, against the defendant company was properly reversed upon the former hearing. It is contended that the judgment in favor of the defendant Rogers should also be reversed. The company brought

the case here upon petition in error to reverse the judgment rendered upon the verdict against it. The plaintiff has also filed a petition in error to reverse the judgment in favor of the defendant Rogers. The whole case is before this court for review. The defendants were sued jointly. The whole issue was presented to the jury together. The defendant company acted only through its agent Rogers. The negligence of Rogers would of course be the negligence of the company.

In *Gerner v. Yates,* 61 Neb. 100, similar conditions existed. In that case several defendants were sued jointly, as officers of a national bank, for damages resulting from false statements made by them as to the financial condition of the bank. A verdict was rendered in favor of one of the defendants, and against the other defendants. Judgment having been rendered upon these two verdicts, the case was brought to this court in the same manner as was the case at bar. The court said:

"The verdict is an anomaly; it is in irreconcilable conflict with itself. It is in effect a declaration by the jury that the material allegations of the petition are both true and false."

The court, then, having thus determined that the judgment against some of the defendants could not stand, proceeded to examine the question whether the verdict and judgment in favor of the other defendant could be supported. The contention there was that the proof failed to support a verdict against any of the defendants, and that, therefore, the judgment in favor of one of the defendants should be affirmed, and the judgment against the other defendant should be reversed. The court appears to have assumed that, if the evidence entirely failed to support a verdict against any of the defendants, the above contention was meritorious, and that judgment in favor of one of the defendants should be affirmed. The court then discussed at length the evidence, and concluded that there was some evidence upon which a judgment might be supported against the defendants, and expressly for that

reason reversed the judgment as to all of the defendants. The reasoning and conclusion of the court in that case is in harmony with a proposition advanced in the former opinion herein which has been much criticised. In the former opinion it was said:

"But, in the case at bar, it is not contended that there is not sufficient evidence to support the verdict in favor of the defendant Rogers. All that is urged is that there is some slight contradiction upon a not vitally material point. Why then should he be deprived of the fruits of his just victory because the jury absurdly condemned another whom, upon the same evidence, they might with equal propriety have exonerated."

That is, there being no sufficient evidence against any of the defendants to sustain a verdict against them, a verdict finding in favor of one of the defendants ought not to be disturbed. Unless this proposition is correct, the whole reasoning of the opinion in *Gerner v. Yates* was uncalled for.

It is not the practice of this court to dismiss a law action upon reversing the judgment of the district court. In this respect the former judgment of this court is modified so as to remand the cause against the defendant railroad company to the district court; in all other respects it is adhered to.

JUDGMENT MODIFIED.