JOSEPH J. YOUNG, ADMINISTRATOR, APPELLEE, V. MARION G. ROHRBOUGH ET AL.; COMMERCIAL BUILDING COMPANY, APPELLANT.*

FILED MAY 21, 1909. No. 15,690.

1. Landlord and Tenant: INJURIES: NOTICE. A. and B. caused a three story and attic building to be constructed. Above the first floor the principal use to which the building was devoted was for college and lodge room purposes. The structure was planned with that intention. They leased the third floor for use of an organization, composed of men and women, which held its lodge sessions once each week. The attic floor was leased for the purposes of a gymnasium. They afterwards sold and transferred the property to the C. B. Company, a corporation, of which they, together with one S., owned the capital stock, and the three were made the directors and managers. At a subsequent time, and while the lodge was in session, a portion of the plastering fell, striking one of the lady members and inflicting an injury from which she died. In a suit by the administrator of her estate for the

_____

* Rehearing allowed, See opinion, 86 Neb. ——,

damages caused by the injury and her death, *held* that in the construction of the building A. and B. were not the agents of the C. B. Company; that, if the building was improperly constructed and constituted a menace to the life and limb of those rightfully occupying it, the C. B. Company, having approved the lease and continued the use of the building, was chargeable with knowledge of its dangerous condition and would be liable for the damage resulting from the injury, there being no contributory negligence shown on the part of the deceased.

2. ———: ———: EVIDENCE. At the trial the principal issue was as to the averments of the unsafe and faulty construction of the building and its continuance in that condition until the injury was inflicted. On this subject the evidence was conflicting, the plaintiff contending that, by the use of the fourth or attic floor as a gymnasium, the building was caused to vibrate and shake, the floor and ceiling to spring up and down, and that thereby, the plastering having been improperly applied to the ceiling and wall, the plaster was caused to fall; while the defense was that the building was properly planned, composed of good material and constructed in accordance with approved methods. *Held,* That these questions of fact were for the consideration of the jury.

3. Instructions submitting the case to the jury on the principles of law above outlined *held* properly given.

APPEAL from the district court for Douglas county: GEORGE A. DAY, JUDGE. *Affirmed.*

*Benjamin S. Baker*, for appellant.

*Herbert A. Whipple* and *Nelson C. Pratt, contra.*

REESE, C. J.

Marion G. Rohrbough and George A. Rohrbough constructed a building in Omaha consisting of three stories and an attic. The purpose for which the building was constructed was principally for the use of colleges and lodges, especially above the first floor. The attic portion was leased for use as a gymnasium. One large room on the third floor was leased to an organization known as the "Tribe of Ben Hur," which consisted of both men and women, and which held its meetings on Tuesday of each

32

week.   While this organization was in session on the
evening of May 8, 1906, a portion of the plastering fell
and struck Mrs. Dora May Young, a member of the
"tribe," inflicting injuries from which she subsequently
died.   This action was brought by her husband, Joseph
J. Young, as the administrator of her estate, who alleged
that she left a family of children, naming them, depend-
ing upon her for nurture and support.   The Rohrboughs
leased the third floor of the building to one Baright for a
term of years.   They afterwards transferred the property
to the defendant, the Commercial Building Company, a
corporation, which assumed, took over and continued the
lease to Baright.   It was alleged in the petition that the
injury was caused by the faulty and imperfect construc-
tion of the building by the Rohrboughs, and they and
their grantee, the Commercial Building Company, with
Baright, were made defendants to the suit.   Upon the trial
the court directed a verdict in favor of Baright, and sub-
mitted the case to the jury as against the two Rohrboughs
and the Commercial Building Company.   A verdict was
returned in favor of the Rohrboughs and against the
Building Company, upon which judgment was rendered.
The Commercial Building Company appeals.   From the
pleadings and evidence it appears that the stock of the
Commercial Building Company is owned by the two
Rohrboughs and one Shimer, and that the three constitute
the board of directors of the corporation and have sole
charge of its affairs.   Shimer was not made a party de-
fendant to the suit.

1. It is claimed by appellant that the verdict is, first,
contrary to law; second, inconsistent; and, third, contra-
dictory and in irreconcilable conflict with itself, and for
those reasons the judgment rendered upon it should not
be permitted to stand.   This contention grows out of the
fact that the Rohrboughs and Shimer are the sole stock-
holders and directors of the building company; that they
constructed the building, and, if it was defective in its
construction, the fault was theirs; and that, as is claimed,

they were the agents of the corporation, and, if they were not liable, the corporation was not. An exhaustive brief has been filed in support of the contention that "the agents of a corporation are liable for their own wrongful acts while acting for the corporation, and the corporation is liable, not for having done or omitted to do such wrongful act, but by operation of law. The law makes the corporation liable only where its agents have been guilty of a wrong," etc. The verdict appears to have been in the usual and proper form. It was a finding in favor of plaintiff and against the defendant, the Commercial Building Company, with the assessment of the amount of plaintiff's recovery, and "in favor of the defendants, Irving G. Baright, trading as Baright Hall Association, Marion G. Rohrbough, George A. Rohrbough, against the said plaintiff." The judgment, in so far as it refers to those defendants, is somewhat unusual in form, but we think it sufficient and not open to attack by appellant. It is adjudged "that the said defendants Marion G. Rohrbough and George A. Rohrbough, as individuals, and that the said defendants Marion G. Rohrbough and George A. Rohrbough and each of them as directors and agents of said Commercial Building Company go hence without day, and that the said plaintiff, Joseph J. Young, as administrator of the estate of Dora May Young, deceased, pay the costs herein, taxed at $——, for which execution is hereby awarded." It is possible that this kind of judgment was suggested by the averments of the petition, but that it is unnecessarily awkward and verbose must go without saying. An ordinary judgment in favor of those defendants was all that was necessary for their protection. But of this appellant cannot be heard to complain.

Appellant is a corporation, a person in law, a legal entity, capable of suing and being sued, of holding property, and through its agents of making contracts which it can enforce and by which it can be bound. The theory upon which the verdict and judgment are supposed to be based is, doubtless, that the building company was the

owner of the building when the injury occurred; that said building was not safely and suitably constructed for the uses to which it was put; that appellant had leased or approved the leases which had been granted prior to the time when it became the owner; and that, for these reasons, it was liable for the loss occasioned by its failure to see that the premises were safe or were not used for a purpose which would render it unsafe or dangerous. This being true, we can see no inconsistency or illegality in the form of the verdict or judgment. They were in no sense the agents of the building company in the construction of the building, for at that time the building company had no interest in it. When they transferred it to the company, all their individual interest in the property itself was extinguished, and they became the owners of such shares of the capital stock as they received. The company could own, not only the property in question, but any other property it might become possessed of. For the reasons here suggested, we cannot see that the cases cited by appellant, holding that when a defendant and its servants or agents are sued jointly for damages resulting from the wrongful acts of the agent alone, and the jury finds in favor of the agent and against his employer, the verdict cannot stand, can have any bearing on this case. The decisions thus cited in support of appellant's contention are *Chicago, St. P., M. & O. R. Co. v. McManigal,* 73 Neb. 580, and *Doremus v. Root,* 23 Wash. 710. Nor are we able to see that *Gerner v. Yates,* 61 Neb. 100, can throw any light upon this case. That case was against joint tort-feasors, three officers of a national bank, for making false statements. The jury returned a verdict in favor of the plaintiff and against two defendants, but against the plaintiff as to the other. The court held, in effect, that, if any were liable, all were, and, if any were not, none were. That is not this case.

2. The next contention is that the verdict was not sustained by sufficient evidence. To our minds this presents a much more serious question. There is no contention

that the death of Mrs. Young was not caused by the injury she received while within the building under the circumstances above stated. It is contended, however, that the injury received was an accident for which appellant is in no way responsible, that it was not guilty of negligence in permitting the building to be used in the way in which it was used, and that the falling of the plastering was an event which could not have been reasonably expected nor guarded against. On the part of the defense, the architect who prepared the plans and specifications and who superintended the construction of the building, the various inspectors, contractors, workmen and others of experience were called, and all testified that the structure was erected in accordance with the plans and specifications, of good material, in a workmanlike manner, and in accordance with usual and approved methods. It was stated by practically all that the visible defects which were observed were due to the settling of the walls, girders and trusses, owing in part, at least, to unseasoned lumber, which occurred in practically all such buildings, and for which no one could rightly be censured or blamed. In a general way the plans and specifications were approved, but in some respects not specifically. The testimony and plans show that the floor above (the attic floor) was supported by truss work of considerable length, which it is claimed was not well sustained, and that the use of the attic as a gymnasium, where there was jumping, tumbling and violent exercise on the part of those occupying it and engaging in the exercises, caused the building to vibrate and shake to an unusual and dangerous extent. Such exercises were carried on at the same time that the Ben Hur organization was holding its meetings and entertainments, and at times the confusion became so great as to cause the organization to suspend its business. This condition seems to have been largely due and owing to the noise caused by the tumbling, but the vibration was very noticeable, some say tremendous, and this probably caused the plaster to break loose and

fall. A number of witnesses testified to the excessive shaking and vibrations. The fact of the springing of the ceiling and vibrations of the building was easily observed and observable, if the evidence on the part of the plaintiff, in this particular, is to be believed, and of that the jury were the sole judges, and it would easily be inferred that this severe vibration and springing of the ceiling was the cause of the breaking loose and falling of the plaster, and that this could and should have been discovered by ordinary observation and avoided by the supplying of proper supports. The bill of exceptions is of great length and an epitome of the evidence cannot be given. It must be sufficient to say that our conclusion is that the jury found that in the respect suggested the appellant failed to discharge its duty to those occupying the building. Upon this view we cannot say there is not sufficient evidence to sustain the verdict.

3. It is next contended that the trial court erred in giving to the jury, instructions Nos. 6, 7, 8, and 13. These instructions are too long to be here set out, and a very brief synopsis must be sufficient. Instruction No. 6 deals alone with the question of the liability or nonliability of the Rohrboughs. As the verdict of the jury was in their favor, there can be no ground of complaint either by them or the building company, and this would be true even though the instruction might otherwise be open to criticism. Instruction No. 7 treats upon the relation of the Commercial Building Company to the case. It is, in substance, that if the company had knowledge of the defective construction of the building, or by the exercise of ordinary care could have known of the fact, and knowingly maintained it, if the jury found it was a menace to life and limb of those rightfully frequenting the premises, providing the plaintiff had established the fact of that condition, they should find against the building company, unless they found that the death of the deceased was the result of her negligence, or that the injury was the result of a pure accident for which no one would be liable; that

upon the question of the knowledge of the company it would be bound by such as was possessed by its directors and managers or either of them. The rule of law as to the liability or non-liability of the defendants was fully and clearly stated in other instructions, which considered with this one renders it unobjectionable. Instruction No. 8 treats of the liability or nonliability of the Rohrboughs growing out of their relation to the building company as directors. What we have said regarding instruction No. 6 must apply to the one now under consideration. Instruction No. 13 is simply a direction to the jury as to the form of their verdict in case they found in favor of plaintiff and against any of the defendants. We can discover no objection to it. The principal criticism is that it permits a divisible verdict. This we have found was not error.

4. Complaint is made of the action of the court in refusing to give certain instructions asked for by defendants. The first of which complaint is made was a direction to the jury to return a verdict in favor of defendants. According to our view of the case no further attention need be given to it. Instruction No. 2 was a brief but imperfect statement of the issues, which was fully covered by the instructions given. No. 3 was to the effect that, before defendants could be held liable upon the ground that the building was not properly constructed, they must have known of its defective condition. The court had instructed that they must have known of the fact or had sufficient information to charge them with such knowledge. The instruction asked was defective for this reason. The fourth requested was an effort to withdraw from the jury all consideration of the construction and maintenance of the building except as to the charge that the plastering which fell was improperly placed upon the wall. The whole question of the construction and condition of the building, as well as of the method of the lathing and plastering, had been gone over by the evidence and submitted to the jury. There was no error in

refusing the instruction. . The fifth, sixth, seventh and eighth were practically to the same effect and were rightfully refused. The whole subject was properly covered by the instruction given.

While, had the question of defendant's liability been submitted to us in the first instance, we might have been inclined to find in their favor under the evidence submitted; yet we are reminded that the jury has passed upon the weight of the evidence, and with their finding we must be content.

Discovering no prejudicial error in the trial, we must affirm the judgment of the district court, which is done.

AFFIRMED.